Mr. Stolzer here, am I saying that correctly? Probably not. Mr. Stolzer here, your honor. Very close. All right, whenever you're ready, you can get settled for a minute if you need to. Also, you've given some of your argument to the intervener, so you have the 12 minutes plus a fee for rebuttal. Right, thank you. You may begin. May it please the court, my name is Peter Stolzer and I represent Appellant Plains All American Pipeline. I'd like to reserve three minutes of my time for rebuttal. This is a case where workers consciously decided not to sue their employer, a company called Cypress, for alleged unpaid overtime and instead decided to sue only Plains, which is Cypress' customer, in an effort to avoid their promise to arbitrate. These workers' claims should be compelled to arbitration because their arbitration agreement delegates the issue of arbitrability to the arbitrator. And, in all events, Plains is entitled to compel arbitration as a third-party beneficiary of the workers' employment agreements and separately under intertwined claims estoppel, since Plains is alleged to be a joint employer with Cypress, who made the pay decisions at issue in this case. And the plaintiffs' overtime claims are intertwined with their employment agreements, which govern their pay and without which they would never perform any work for Plains. The first question for the court in this appeal is whether the Cypress plaintiffs, as signatories to their employment agreements, delegated arbitrability of their claims against Plains, a non-signatory, to the arbitrator. The U.S. Supreme Court, in the Henry Schein case, held that if a valid arbitration agreement exists and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue. The Cypress plaintiffs entered into… Didn't Schein say the first thing you have to do is decide whether there's a valid arbitration agreement? It did. And in this case, the Cypress plaintiffs entered into a valid arbitration agreement in which they agreed to arbitrate all claims arising from their employment with Cypress. They don't dispute that they entered into that agreement. Their dispute is whether the non-signatory, in this case Plains, can enforce that arbitration agreement. Sure, but I guess I read Schein in other cases to say that that first question, and maybe you win under it, but it's one for the court, even if there is a delegation clause. Would you disagree with that? No, I agree that the formation issue is one for the court. Okay. I agree with that. Okay. And that formation issue is an issue of state law? It is an issue of state law. The formation issue is. Okay. So tell us, under Texas law on contract formation, why this was an agreement or a delegation to the arbitrator, even as to your client. Well, and let me be clear on what the formation issue is. The formation issues, as the Texas Supreme Court have looked at, are typically issues where the signatory disagrees whether they entered into any arbitration agreement at all. That's not the case here. The Cypress plaintiffs agree they entered into their employment agreements. They agree that there's an arbitration provision therein, and that it applies to all claims. But they agree with one party. I think they agreed there's an arbitration agreement with Cypress, but they say Plains, your client is not a party, didn't sign it, et cetera. And so the first part of your statement is the formation inquiry. The second inquiry is an inquiry as to arbitrability. And we know that because both Britannia U looked at it that way. That was a Fifth Circuit case that's binding on this court. And also the Texas Supreme Court has looked at it this way in the Jody James case. The Jody James case, well, let me start with. So your position is if a person forms, enters into an arbitration agreement with any party, and there's that agreement, everyone agrees it exists, it exists here, that then if someone goes to court suing another party, that the existence of that arbitration agreement automatically becomes an issue because there was one contract formed as to two parties. It automatically becomes a delegation issue, and it has to go to arbitration to decide if he also arbitrated against the non-signatory. That's what the Fifth Circuit says in Britannia U, Judge. The Fifth Circuit says that the incorporation of the AAA rules clearly and unmistakably delegates arbitrability, even with regard to a signatory plaintiff's dispute with non-signatory defendants. And the Fifth Circuit reached that result, even though it expressly noted in that case that the agreement at issue did not explicitly state it binds non-signatories to the agreement. Right. In Britannia U, though, some of the people sued were signatories. Some weren't. And so in that situation, the plaintiff decided to sue someone who he clearly had agreed to arbitrate with. What's your best case for saying that this has to go to an arbitrator in a case where only a non-signatory was sued? The best case on that, Judge, well, I would still go back to Britannia U because Britannia U's holding doesn't reference the fact or doesn't rely on the fact that there were both signatories and non-signatories or any of the agency-type or estoppel-type issues that you raised. Those were a step two inquiry. But more recently, the Ninth Circuit looked at exactly this argument and said, just because the prior cases that were presented to us were issues involving both claims against signatories and non-signatories, I believe the language the Franklin case used that we cited in our briefing was, that's not an invitation for plaintiffs and their counsel to sue only the non-signatory to get around that. So if these plaintiffs sued me and said Judge Costa owes us overtime, that would have to go to arbitration? If the arbitration agreement incorporates the AAA rules, that's what Britannia U says. Britannia U's holding, which is binding here, requires that the Cypress plaintiffs' claims must be compelled to arbitration because the Cypress plaintiffs entered into a valid arbitration agreement and they delegated the issue of arbitrability, including esti-claims against the non-signatory-like claims, to the arbitrator through incorporation of the AAA rules. Although the federal substantive law of arbitrability controls this issue because it's not an issue of formation, it's an issue of arbitrability, delegating the issue of arbitrability to the arbitrator is actually also consistent with the 2018 Texas Supreme Court case the Cypress plaintiffs rely on called Jody James Farms v. Altman Group. Both Jody James and Britannia U, as I mentioned, expressly note that the parties can agree to arbitrate arbitrability. So under both those cases, before the court can weigh in on the non-signatory's ability to enforce the arbitration agreement, the court first has to determine whether the signatory clearly and unmistakably delegated the question of arbitrability as to claims against the non-signatory arbitrator. Under Britannia U, the fact that the signatory incorporated the AAA rules was enough to establish clear and unmistakable evidence of delegation, even as to claims against non-signatories. So because the federal substantive law of arbitrability controls in this case, that should end the court's inquiry. If the court were to look to Texas law, in Jody James the Texas Supreme Court said that whether there is clear and unmistakable evidence of delegation as to a non-signatory depends on the scope of the claims for which the AAA rules were incorporated. In that case, the arbitration agreement was explicitly limited to claims between the two signatories. So Jody James found that the arbitration agreement directly incorporates the AAA rules only for these disputes, the disputes between the signatories, not for disputes between Jody James and unspecified third parties. That's different and much narrower than what the Cyprus plaintiffs agreed to. They incorporated the AAA rules for all claims arising out of their employment with Cyprus. That language broadly encompasses claims against non-signatories, like the Cyprus plaintiffs' overtime claims against planes, and clearly and unmistakably evidences an intent to delegate the issue of arbitrability to the arbitrator, even as to the non-signatories. So under both Britannia U, which is controlling, and also Jody James, Texas Supreme Court precedent, the Cyprus plaintiffs' claims must be compelled to arbitration based on the delegation. Even if the court decides to go beyond the delegation inquiry, Plains is entitled to enforce the Cyprus plaintiffs' arbitration agreement as a third-party beneficiary of their employment agreement. Here, Plains is clearly a creditor beneficiary under Texas law. Cyprus employed the Cyprus plaintiffs through the employment agreements in satisfaction of a legal duty Cyprus owed to Plains to provide inspection services pursuant to the major services contract between Plains and Cyprus. So the Cyprus plaintiffs' employment agreement confers a direct benefit on Plains in the form of the inspection services the Cyprus plaintiffs provided to Plains in satisfaction of Cyprus's legal duty to provide those services and to provide the personnel who would provide those inspection services. And the intent to benefit Plains is made clear in the employment agreement since the employment agreement specifically states employment is based on a specific project and for a designated customer, and then incorporates by reference pay letters identifying Plains as that designated customer. Plains' third-party beneficiary status is further and separately confirmed by the fact that Cyprus contractually agreed to indemnify Plains for the claims asserted by the Cyprus plaintiffs in this case. Texas courts have found that such an indemnification obligation independently confirms that Cyprus intended to give Plains the right to enforce the Cyprus plaintiffs' arbitration agreements as a third-party beneficiary. So because we're a creditor-beneficiary under Texas Supreme Court cases like the city of Houston case, that's enough to establish we're a third-party beneficiary, but our claim for third-party beneficiary status goes even beyond that given Cyprus's indemnification. And the courts have looked at the indemnification issue and say ultimately that makes sense to prevent exactly what's happening here. The Cyprus plaintiffs are trying to litigate claims for which Cyprus is financially responsible given their indemnity, but are at the same time trying to get around their obligation to arbitrate by suing only the party to which Cyprus owes the indemnity. And so that shows an intent why the party owing the indemnity would want to make a third-party beneficiary of non-signatories. So based on the contractual language, identifying Plains as the designated customer for whom the Cyprus plaintiffs were hired by Cyprus to provide services, Cyprus has used the employment agreements to discharge its obligations to Plains and Cyprus's agreement to indemnify Plains, there is significant evidence here establishing that Plains is a third-party beneficiary under Texas law and can enforce the Cyprus plaintiffs' arbitration agreements. Plains is also entitled to compel arbitration under intertwined claims estoppel. The Fifth Circuit's eerie guess, as it confirmed earlier this year, is that the Texas Supreme Court would adopt intertwined claims estoppel. The Fifth Circuit, in Hays and HCA holdings, articulated the concern that led it to compel arbitration under intertwined claims estoppel. In that case, as the plaintiffs' strategic pleading intended to avoid the arbitral forum through efforts to distinguish amongst defendants and claims. So you agree that Texas law controls that question about intertwined claims estoppel? It does, but the Fifth Circuit cases obviously are instructive given that it's the Fifth Circuit's eerie guess that the Texas Supreme Court would adopt intertwined claims estoppel. Intertwined claims estoppel applies, as the Texas Supreme Court noted in Jody James, where a non-signatory has a close relationship with a signatory to the arbitration agreement and the claims are intimately founded in and intertwined with the underlying contractual obligations. As the first element, the district court said Cyprus and Plains did not have a close relationship because there was not an owner, agent, or parent relationship. But this court, earlier this year, in Trujillo v. Vault Management Corporation, affirmed that type of relationship is not necessary. Instead, the Fifth Circuit found a close relationship existed between a staffing company and its unaffiliated customer for purposes of statutory discrimination and retaliation claims because the same claims and factual allegations applied to both the signatory and its non-signatory customer. Here, ultimately, and I realize I'm running a little short on time, but what's happening here is that the Cyprus plaintiffs are attempting to hold Plains responsible for pay practices that Cyprus has filed a brief in this case admitting. They employed the Cyprus plaintiffs, they paid them, and they're the ones who made the decision to classify them as exempt from receiving overtime. So it's clear that Cyprus's pay practices are at issue, and that's precisely the type of relationship that led to concerns about strategic pleading that the Fifth Circuit was going to have. So maybe you'd win the case on the merits because you're not an employer under the FLSA. And that's clearly – that is our position, Judge Costa, but our position is that that issue should be decided in arbitration by an arbitrator. All right. I think we have your argument. You have time for rebuttal. We'll hear from Ms. Cowan. Good morning, Your Honors. May it please the Court. My name is Rachel Cowan, and I represent Cyprus TIR, the intervener that actually employed Mr. Newman, paid his wages, and made the decision to classify him as exempt from overtime. And as my colleague noted, there is a master service agreement between Plains and Cyprus that obligated Cyprus to pay Mr. Newman in accordance with the FLSA and set forth language requiring Cyprus to indemnify Plains for claims arising from its failure to do so. We intervened in this case because, in substance, it is a claim against Cyprus. And as the United States Court of Appeals for the Tenth Circuit recognized last week in the matter of Ferrell v. Semgroup, when Mr. Newman sues Cyprus' customer for an FLSA violation arising from Cyprus's pay practices, it is nothing more than, quote, an attempt to avoid the arbitration he agreed to in his contract with Cyprus through artful pleading and is the epitome of a party playing fast and loose with the courts, end quote. It's in light of that artful pleading that Cyprus moved in the court below to transfer the case to Oklahoma and compel arbitration of this entire dispute under Section 4 of the FAA as a signatory to the agreement and as a party to the lawsuit that's been aggrieved by his failure to arbitrate. While our motion is trailing behind, there is some overlap in those motions on two areas that I'd like to address. And first, Your Honor, I'd like to address your question under Henry Schein, but whether or not if he sued you for an FLSA violation, would that be compelled to arbitration? Because I see it. I mean, he'd have no case on the merits, but I don't see – if I didn't sign an arbitration agreement with the plaintiff, I don't see why we'd have to arbitrate. But I think you've jumped the gun a little bit, Your Honor, because what's being compelled to arbitration is simply whether there is a duty to arbitrate. The arbitration agreement incorporates the AAA rules, which expressly delegates to the arbitrator the power to decide its jurisdiction, including, quote, the existence of an agreement. And so what Britannia U., Blanton in the Sixth Circuit, and other cases say is that once there is an agreement to arbitrate with a delegation clause, it is fair game when the non-signatory moves to compel the signatory to delegate to the arbitrator the existence. And your question, what if he sued you, I fear, delves into the area that the Supreme Court and Henry Schein cautioned us not to go, whether the claim would be wholly groundless. Henry Schein takes that inquiry off the table, and the Supreme Court, in a series of decisions, has cautioned the lower courts not to question whether arbitration is an inferior tribunal to resolve that issue. The plaintiff in this case, all of them, will have a fair opportunity to argue to the arbitrator that the scope of the agreement does not cover claims against Plains. But arbitration is a matter of contract, as, of course, you recognize. It is a matter of contract. I mean, let's say the argument here, they sued you, and the argument was, oh, Mr. Newman didn't have capacity to enter into the contract. He's incompetent, or something like that. You agree that would be for a court to decide. That's a question of contract formation. So if Mr. Newman claimed, I did not knowingly consent. Let's say someone forged my name on that agreement, on that contract. I never signed that. Someone forged it. And that goes to whether Mr. Newman agreed to arbitrate at all. Contract formation. That's right. Here, there is no challenge to formation, only to scope, and that is whether he agreed to arbitrate his claims with Plains. But that's where the whole issue is, whether this non-signatory issue is in the formation box, or like you claim, in the scope box. I think it is in the scope box. I think this court in Britannia, you said it was in the scope box. I think Blanton said it's in the scope box. And I think, I'm sorry, I'm drawing a blank, I think it's Swiger from the Sixth Circuit also says it's in the scope box unless there is a specific challenge to the delegation clause. Your Honor, I have 45 seconds left, and so I'd like to just briefly touch upon the intertwined claims. And I think it's important, again, to look back to the Tenth Circuit decisions in Farrell and Reeves. I understand that those cases are decided under Oklahoma law, and there the Tenth Circuit made its eerie guess that Oklahoma would recognize concerted misconduct, which is not the same as intertwined but has significant overlap. Critically, both doctrines are aimed at preventing the artful pleading that allows someone to get around their duty to arbitrate. And here, I think it's important, again, to go back to Farrell. I'm out of time, Your Honor. You can finish your thought. Thank you. Again, I think it's important to go back to Farrell, which is instructive on the additional requirement of intertwined claims which cabins concerted misconduct to the close relationship. And I think there Justice Baldock addressed that. Again, quote, by bringing FLSA claims against SEM Group, Farrell is trying to use his contract with Cyprus to his advantage when it suits him and disavow it when it does not. After all, Farrell would not have performed work for SEM Group, much less had any grounds for asserting FLSA claims against it were it not for his employment agreement with Cyprus. And I think that answers the closely related test, as does Regal. Thank you. All right. Thank you, Ms. Cowan. All right, we'll now hear from Plaintiff's Counsel, Mr. Birch. Good morning, Your Honors, and may it please the Court. Plains has no arbitration agreement with Mr. Newman of any kind or any of the other plaintiffs. And in its own contract, the Master Services contract that we heard about from Mr. Stuhlmeier, it expressly declined to choose arbitration to resolve its disputes, instead assigning, quote, exclusive jurisdiction to resolving disputes that relate to the Master Service, excuse me, the Major Service contract, to Texas state and federal courts. We're nonetheless here today because Plains insists that it is entitled to force Mr. Newman, with whom it has no contract, to arbitrate his claims. The issues that the folks at Plains raise almost universally questions of Texas state law. I'm going to talk about this in a minute, but there are several points where I disagree with my colleagues across the bar as to what law controls. And they say that they are, I haven't heard too much about it today, but that they are covered by the language of the contract. They're wrong about that, and we can look to the Texas Supreme Court's case in G.T. Leach, which discusses the difference between the scope of an arbitration agreement and who has agreed to arbitrate. And that is based, in my opinion, on the kind of common sense notion that whatever types of claims I have agreed to arbitrate with Ms. Lomax tells me very little about what I might have agreed to arbitrate with Ms. Cowen. Those are two different inquiries, as the Texas Supreme Court will. Well, I mean, contract formation is certainly a Texas inquiry. Intertwined estoppel is governed by Texas law. It is. But on this preliminary question of whether this is a formation issue or a scope issue, what law governs that? It is clearly Texas law, and there are several reasons for that. Well, couldn't a state then, I mean, for years states have tried to sort of circumvent the Federal Arbitration Act. Couldn't a state then just say, well, everything is part of formation under state law, and if a court were bound to follow that, you'd have the broad arbitrability that's applied in the scope analysis thwarted, basically. I don't think so. I mean, the Supreme Court says when you are deciding who has agreed to contract, is there an agreement to arbitrate, right? You look to traditional principles of state law, right? But the Supreme Court of the United States is making that call. Maybe my question wasn't clear. I understand contract formation is governed by state law. Yes. But on this question of the whole of the dispute is the issue of whether a non-signatory is bound by a delegation clause. To me, the question is does that fit in the formation box or does that fit in the scope box? And in deciding which box it goes into, I mean, people are talking about cases like Schein, right? That's the Supreme Court as a matter of federal law saying what's formation and what's – so is that preliminary question do we look to Texas courts or do we look to federal courts? Again, I think you look to Texas state courts. And let's go back to Arthur Anderson v. Carlisle, right, where we got into this question because the Sixth Circuit had said, look, you can't – non-signatories can't enforce arbitration agreements at all, right? And the Supreme Court says, no, no, no, state law, traditional principles of state law allow non-parties to enforce or be bound by contracts because it's supposed to just be contracts. It's not supposed to be arbitration-specific. It's supposed to just be general contract law. They allow them to be bound by contracts. And so you look to state law, right? Now, in Britannia U, which predates Jody James – going to get to that in a second – there's no discussion as to what law applies. I mean, if you read the briefing, the plaintiffs apparently thought it was supposed to be Welsh or English law. The folks that represented the defendant didn't really say. Again, this is at the oral argument on the hearing. The plaintiff's lawyer said, look, if it's, quote, American law that applies, then we concede. The non-signatories have also delegated. And so Britannia U, which dealt with a dispute that arose in Nigeria and which relies on a Second Circuit case that addresses a case that arose in Korea, where there was a lawsuit filed in Korea, and both of which adopt a special set of rules which are not at issue here. I don't know how much that tells us. What I do know is the Supreme Court in Carlisle, in my opinion, says you look to state law to decide these issues. Third-party enforcement, you look to decide those issues. And in Jody James, the Texas Supreme Court said, you know, when we were talking about a non-party, at least where the agreement is silent, where the agreement doesn't say, yeah, this includes third parties, it includes other folks as well, that that doesn't meet the clear and unmistakable standard that's required for a delegation clause. I mean, again, the presumption here runs against them, right? We start with the presumption that this is a question for the court. In my opinion, we start with the presumption that it's a question of Texas state law. And this court recognized that it's a question of state law. And, you know, you ask them for the best case for them. I think the best case for us is Halliburton Energy Services versus Ironshore, which is 921 F3rd 522 at 531. It's a Fifth Circuit case from 2019. And in that case, unlike Britannia U, we're clearly talking about Texas law. They say we're talking about Texas law. And they say when we're trying to decide whether or not a non-signatory can enforce an agreement, i.e., is there an enforceable agreement to arbitrate, you look to Texas law, right? They cite Jody James for that position. And even in Henry Schein, the court says first you figure out if there's an agreement to arbitrate, right? Did we agree to arbitrate, in this instance, arbitrability with the folks at Planes? And the answer to that question is not clearly an unmistakably yes. Because it's not clearly an unmistakably yes, we don't go to anything else, right? We have reached the end of our road for the folks at Planes on that issue. With respect to the third-party beneficiary argument, I would note that almost all of the third-party beneficiary argument is new on appeal. You can find their discussion of the third-party beneficiary argument in the record below, starting at page 1090 and ending on page 1091, because it's about this long. And the new arguments on appeal include, oh, we're a creditor beneficiary because we were obligated to provide the services under the major service contract. Of course, when you look at the major service contract at page 310 of the record on appeal, it says this contract does not obligate us to provide services to Planes, nor does it obligate Planes to use our services. Talking about Cyprus and Planes right there. There was no argument regarding the indemnity agreement below. And I'd just like to say that there are some Texas cases that say the existence of an indemnity agreement is some reason why a party might want to make another independent entity a third-party beneficiary. But thinking up some reason that is not founded in the language of the contract, to me, does not support the finding of third-party beneficiary status under Texas law. Texas law is very clear. Look, we look at the deal you made, right? We look at what you said in your contract. We don't try and think of reasons why we think, well, this would be good or this would be fair. We look at the deal that you made and not the deal that you wish you made or try and come up with a better deal for you. And so I recognize that those cases exist. I don't think that they are in any way controlling here. I would also note that there's no way or there's certainly no evidence that Mr. Newman knew, oh, Cyprus is going to have to pay if you sue and you recover against Planes. And, indeed, that's not the way this law works. The Fifth Circuit has held repeatedly that there is no common law contribution in indemnity for FLSA claims. It held it in the La Compete case back in the 80s. It held it in the Barfield case in, I believe, the 90s, maybe 2000. So there is no contribution in indemnity. We had no idea that, oh, if you sue Planes, Cyprus is going to have to pay. And the reason why the law makes people individually liable for their own violations, as well as if there is proof of a joint employer relationship, the relationships of the joint employers, so that people can actually recover their wages from the people who can pay and the people who benefited from their work. So are you alleging a joint employer relationship? The claim here is not a joint employer claim. There may have been a joint employer. There probably was a joint employment relationship between Cyprus and Planes, right? But we are not saying, hey, Planes, if Cyprus staffed him to somebody else, you have to pay for that time, too, because you're a joint employer, right? We are only saying, Planes, you are responsible for your own time. And under our precedent, in the Graves case, the Fifth Circuit said the way we, the Fifth Circuit, different from some other circuits, but the way the Fifth Circuit looks at it is the Fifth Circuit says you have to be an employer first.  If you are an employer, then, and just picking on Judge Willett here, Judge Willett is an employer. Then we ask, are you, can you be joint employers, right? That's a second stage inquiry. Here, we're at only the first stage. We say Planes is an employer, full stop. Factually, it may be that they have a joint employment relationship, but that is not the claim that has been alleged here. I hope that's clear. I know that's a little nuanced. I have a question going back to this first issue of whether the non-signatory issue goes to the arbitrator. What do you say about the Sixth Circuit decision? I think Ms. Cowan mentioned it. Swigly, are you familiar with that case? I know that she mentioned Blanton several times, and she may have mentioned Swigly at the end, but it is clear. It basically follows Britannia U and says the non-signatory issue should go to the, is delegated to the arbitrator. So Sixth Circuit law does not say that. I mean, if you look at Blanton, what Blanton says is, look, you have to specifically say, I didn't agree to arbitrate arbitrability. You must challenge the delegation clause separately in order to preserve that issue. It's just like the Supreme Court says, look, you can't, you have to challenge an arbitration agreement specifically. You can't just say the whole contract is void because I didn't know what I was doing or I was drunk when I read it. You must specifically challenge the arbitration agreement. Otherwise, it is presumed that the arbitrator gets to decide that. It's in one of the footnotes in Blanton where they specifically note the fact that they aren't deciding that antecedent question as to whether or not the non-signatory could enforce the delegation clause at all. Here, we're mindful of that. We specifically challenge Plains' argument that it is entitled to enforce the delegation clause, which again under Henry Schein is just supposed to be an antecedent earlier agreement to arbitrate. This time, we're just talking about we're agreeing to arbitrate arbitrability instead of, or preceding to, we're agreeing to arbitrate the merits of the claim. So the steps remain the same regardless. Step one is do you have an agreement to arbitrate? Whether that's arbitrability or the merits of the claim doesn't matter. Step one is do you have an agreement to arbitrate? That question is governed by Texas state law. Texas state law says for non-signatories, that's not incorporation of the AAA rules, which is the same rules that we're talking about here, ain't enough. I'm starting to run a little bit low on time, so I do want to talk about the estoppel argument as well, which I think everybody agrees is governed by Texas state law. I think it's important to note that this review, this court, as opposed to, say, the Tenth Circuit, says that this is an abuse of discretion review, a review of whether or not Judge Counts properly invoked or declined to invoke equitable estoppel is an abuse of discretion review. And I think this one, for me, is a fairly easy question to answer. Texas, like, with all due respect to the folks at the Tenth Circuit, like most states that have addressed the issue after Arthur Anderson v. Carlisle, Texas says we don't go in for kind of this loosey-goosey notion that you can enforce a contract just because you're alleged to have done something bad with the person that is a signatory to the contract. And here, of course, we haven't actually alleged anything against Cyprus, but let's set that to the side. Texas has declined to enforce concerted misconduct. That is absolutely the flavor of estoppel that the folks at the Tenth Circuit applied in both Reeves and the Sim group case. And part of living in a Federalist society is that, you know, different states can have different answers to these questions. And Texas has answered that question by saying we don't do that. Texas requires for intertwined claims estoppel a close relationship with the parties. And not for nothing, the Texas Supreme Court hasn't actually adopted intertwined claims estoppel. They say, well, we recognize it. We think it has some validity. But if we were going to adopt it, we would require that there be more than just a business relationship between the two entities. And in their own briefing, they refer to themselves as being independent third parties. In fact, the folks at Cyprus go on and on about the fact that it makes sense for us to be completely independent because otherwise how will they know that we're actually checking their work and making sure that the pipeline is being done correctly? And so the Texas Supreme Court has said that two independent businesses will not get there. There is nothing that is any different about the relationship between Plains and Cyprus that is any different than the relationship between any pipeline company and any pipeline inspection company that staffs workers to them. I would also point, Your Honors, to the Texas case of Black v. Diamond Offshore Drilling, which addresses the second prong of intertwined claims estoppel, which requires that the claims be intimately founded in and based upon the underlying contract, which here this court held in my own case, the end zone case, that FLSA claims are not founded in the contract. Indeed, the contract here does not provide for overtime. But importantly, it wouldn't matter if it did provide for overtime. The fact is he didn't get overtime, and he's entitled to it under the law. And so he is making a claim based on an independent statutory basis and not based on the contract. There's no question that there are a variety of views on when arbitration agreements should be enforceable and who ought to be able to enforce them. And there's no question that there can be honest disagreements between states, even between circuits, as to what the appropriate approach to take is. But the Supreme Court has told us that in circumstances like this, this is a question for Texas state law. And Texas state law is clear. You get the deal that you made, not anything more, not anything less. Plains has no deal with Mr. Newman. Its own deal specifically says it wants to resolve its disputes in court. This after-the-fact wishing is not the basis for awarding relief to Plains. All right, Mr. Birch, we have your argument. And we'll now hear the rebuttal. May it please the Court, I want to start by addressing the formation versus scope and applicable law issue. Whether a non-signatory can enforce an arbitration agreement is something that both the Fifth Circuit and Britannia U.U. and the Texas Supreme Court and Jody James have looked at as something that can be delegated if there's clear and unmistakable evidence of delegation. They don't look at that issue as a formation issue. They explicitly say non-signatories can delegate. In fact, Jody James, this is a quote from page 631 of that opinion, parties can, however, agree to arbitrate arbitrability. Therefore, since this is an issue of arbitrability, the federal substantive law of arbitrability as expressed in Britannia U.U. controls the outcome. And as Cypress' counsel mentioned, the Sixth Circuit case is Swiger v. Rosette. It's cited to Britannia U.U. and stated that whether a non-signatory can enforce the arbitration agreement against a signatory presents a question of arbitrability that the arbitration agreement delegated to an arbitrator. And the Swiger case also noted the Eighth Circuit and the First Circuit who similarly found this issue to be one of arbitrability. I also wanted to correct, if I could, the record in terms of the claims in this case and whether there's a joint employer allegation. And I'll cite to the record at 203 and 919 from the Cypress plaintiffs' briefing where they say, quote, they allege that Plains was their joint employers and that Plains must, quote, stand or fall with those whom Plains selects to act for it. In this case, the allegation is that Cypress is the party that was chosen to act for it. Ultimately, the argument that Cypress' pay practices and Cypress' liability are not an issue here is incorrect, and that's the type of form over substance argument the Texas Supreme Court cautioned against in In re Merrill Lynch. The Cypress plaintiffs claim they should have been paid overtime. The decision not to pay them overtime was made solely by Cypress. If Cypress had paid them overtime, there would be no claim to be had against Plains. So Cypress' pay practices are being challenged in this case. Their claims are intertwined with their employment agreements, which guaranteed their pay through the incorporated pay letters, discuss what their pay would be, and had they not signed those employment agreements, they never would have performed any services for Plains. The Cypress plaintiffs are attempting to litigate Cypress' pay practices and liability for which Cypress is financially responsible due to its indemnity obligation to Plains as a collective action in federal court by suing only Plains to try to get around their promise to individually arbitrate. That tactic implicates the exact concerns about strategic pleading that has led this court to previously compel arbitration in the Hayes case as well as more recently this year in the Trujillo case. And so the result must be the same here. All right. Thank you, counsel. Case will be submitted.